**Application of Arthur H. FOTSCH, John R. Finley, Gilbert W. Ross and Richard F. Fischer.**

**Patent Appeal No. 7214.**

United States Court of Customs and Patent Appeals.

Nov. 12, 1964.

Cyril M. Hajewski, Milwaukee, Wis., for appellants.

Clarence W. Moore, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 35, 36, 38 and 39 of appellants' application Ser. No. 713,573, filed February 6, 1958, for a patent for a "Machine Tool." Twenty-two claims have been allowed.

Appellants' invention relates to an automatic transfer type machine tool adapted for performing work operations on wheels. The exemplary embodiment in the application illustrates a machine for making the axial bore in railroad car wheels.

The wheels are transferred by power actuated means through three stations as illustrated by Fig. 4 of the application, reproduced below:

[1]. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28 United States Code.

Fig 4

In operation, a wheel is first placed at a loading station 52 so that it may be engaged by a transfer mechanism 100 which operates to move the wheel to a machining station 54. At that station, the boring operation is performed on the wheel and the transfer mechanism then moves it to a position 53 for subsequent removal from the machine.

As shown in Fig. 4, the wheel is disposed in an upright position between guideways formed by a lower rail 47 and an upper rail 48 with the wheel flange bearing against the front side of the rails to limit movement to the rear as viewed in the figure. Displacement in the opposite direction is prevented by means comprising a fence 64 at the loading position 52, a fence or backing plate 70 at the machining station 54 and a fence 65 at the position 53. While the wheels are thus supported in an upright position for rolling movement, they are moved through the three positions by means of rollers 149$a$, 149 and 149$b$ carried by roller arms 137, 138 and 139, respectively, of the transfer mechanism. Upon completion of a transfer movement from left to right in Fig. 4, the three roller arms are pivoted upwardly to bring the rollers out of engagement with the wheels and are then moved laterally in a leftward direction and returned to a starting position.

At the machining station is a fixture head and a spindle head which cooperate for performing the machining operation on a wheel in that position. The fixture head includes a mechanism for clamping the wheel thereto and feeds it to rotating cutters on the spindle to provide an axial hole therethrough.

Claim 35, which appellants analyze in their brief as including a combination of six elements, is set out below with those elements numbered accordingly:

"35. In a machine tool having a machining station for performing a machining operation on wheels;

"(1) a frame;

"(2) guide means supported by said frame and adapted to support the wheels in an upright position for rolling movement and guide them in a path of travel into and out of the machining station;

"(3) power actuated transfer means operative to move the wheels in a rolling movement along said guide means to locate the wheels at the machining station and remove them from the machining station upon the completion of a machining operation;

"(4) a work supporting fixture mounted on said frame in position to secure the wheels to be operated upon in the machining station;

"(5) a tool head mounted on said frame to operably support a cutting tool in position to operate on a wheel secured in the machining station; and,

"(6) means to produce relative movement between said tool head and said fixture for effecting a feeding movement for completing the machining operation on a wheel secured in the machining station.

Claim 36 differs principally from claim 35 in reciting separately a "support means" to which is attributed the work supporting function ascribed to the guide means in claim 35, and in the replacement of the term "work supporting fixture" in claim 35 with the term "clamping means."

Claim 39, which with claim 38 is directed to only the mechanism for advancing the wheels without reciting the machining structure, reads as follows:

"39. In a mechanism for advancing wheels in increments through a plurality of stations; a frame; support means mounted on said frame and operative to support the wheels in an upright position for rolling movement; guide means carried by said frame to guide the rolling wheels in a path of travel through the several stations; and a power actuated transfer mechanism oper-

ably connected to roll each of the wheels along said guide means from station to station successively."

The references relied on by the examiner and the board are:

Stolle 1,661,017 February 28, 1928
Mitchell 2,864,270 December 16, 1958

The Stolle patent discloses an automatic transfer type machine tool for drilling an axial bore in elongated cylindrical members of wood, the pertinent features of which may best be considered in connection with Figs. 8, 9, and 10 of the patent, reproduced below:

A support 104 carried by the bed of the machine is provided with an inclined supply chute 106 on one side thereof and an inclined discharge chute 108 on the opposite side. In Figs. 8 and 9, a workpiece 24 is shown at a machining station

between the two chutes. A mechanism controlling the movement of workpieces from the supply chute to the machining station and from that station into the discharge chute includes a pair of escapement members 110 and 112, pivotable in unison on shafts 114 and 116, respectively. A support 20, located at the machining station, is adapted to come into engagement with one end of a piece at that station to clamp it into cooperation with chuck 10, 12 of a head-stock member 4. When the support 20 is in forward clamping position as shown in Fig. 8, the escapement members are in the position shown in Fig. 9. After the work operation, accomplished by the head-stock 4 rotating workpiece 24 as drill 32 is advanced axially through the piece and then withdrawn, the support 20 is retracted and mechanism is operated to pivot the escapements in a clockwise direction from the position of Fig. 9 to that of Fig. 10. That action results in raising the front teeth of the escapements to clear the path of travel for the completed workpiece and for the next workpiece to be machined. At the same time, the rear teeth of the escapements "act as pushers" upon the respective workpieces to aid in discharging them from their previous positions. When the support 20 moves forward again to engage the next piece to be machined, the escapements return to the positions of Fig. 9.

The Mitchell patent also relates to a machine tool wherein cylindrical workpieces are automatically fed from a receiving station to a working station where an axial bore is drilled therein and then removed for unloading. It differs from Stolle in the specific structure used and in the fact that it is described as for machining billets made of metal. A more detailed discussion is not deemed necessary here.

The examiner held the appealed claims to be unpatentable over either Stolle or Mitchell. He stated:

"In applying the Stolle patent to claim 35, the reference discloses a bed 2, supply and discharge chutes 106 and 108, two pairs of escapement members 110 and 112 operated by support 20 for feeding a rolling workpiece into the machining station and similtaneously [sic] discharging a completed workpiece from the machining station, a chuck 10 and 12, tail stock 30 which supports the drilling tool 32, and a power screw 42 for effecting a toolwork feed.

"In applying the Stolle reference to claim 36, the recited 'guide means' reads on the sides of chutes 106 and 108, and the recited 'clamping means' reads on the base 10 and the support 20 (figure 1).

He also pointed out how he considered Mitchell to show structure corresponding to the recited elements.

The board stated that it disagreed with the position of the examiner "that the escapement mechanism 110–112 of Stolle and the loading mechanism 29 of Mitchell are responsive to the transfer mechanism set forth in the claims." In affirming the rejection, it set forth its view of that matter as follows:

" * * * Considering the Stolle patent as exemplary of the two references, the escape mechanisms 110 and 112 cooperate with the two inclined chutes 106 and 108 shown in Figures 9 and 10 of the reference to provide all of the functions ascribed by the claims to the transfer mechanism, namely to move a blank in a rolling movement to locate the same at a machining station, where a blank is gripped and operated upon by an appropriate tool, and thereafter to remove the worked blank from the station. We consider the reference structure noted above to be the full mechanical equivalent of the transfer mechanism, as broadly set forth in the claims on appeal. We agree with the Examiner that the nature of the workpiece is not significant in the claimed combina-

tion to the machine and transfer mechanism.

"Moreover, while the claims do not state that the workpiece is rolled along on a horizontal plane, we are of the opinion that it is an obvious modification (that is, obvious to one skilled in the art) of the inclined chutes shown in the references, which provide for a rolling movement or feed of the blanks both toward and away from the work station, to provide a horizontal surface and a reciprocating pusher element to push the blanks in a rolling movement along said horizontal surface toward and away from the work station. * * * "

The board further held that the remaining structure recited in claims 35 and 36 has full response in both references.

In our opinion the two references are of substantially the same significance and the appeal can therefore be determined from a detailed consideration of Stolle alone.

Despite the details involved in the specific embodiments of the respective machine tools disclosed by appellants and Stolle, the appealed claims are of such broad scope as to require comparison of only relatively simple aspects of the structures. Thus, both machines utilize a rolling motion to transfer circular workpieces to a machining station where they are held in a clamped condition while axial bores are drilled therein and then to transfer the workpieces away from the station for removal from the machine. Appellants use power actuated means for rolling the workpieces along a horizontal path. Stolle differs by using inclined chutes so that gravity has a part in causing the workpieces to roll although he additionally uses power actuated means which "act as pushers" on the pieces.

The difference in the embodiment of what is claimed on appeal and the figures

of the references is easily explained by the fact that in the appealed claims one *form* of moving means is emphasized and in the references another is preferred. The question becomes whether it would be obvious for one skilled in the art to substitute one for the other and make necessary mechanical changes. We think it would.

Turning to claim 35 for consideration of the exact recitations relied on by appellants, we think it plain that Stolle includes a frame, which constitutes item (1) under appellants' analysis, as well as a work supporting fixture, a tool head and means to produce relative movement, which meet the recitations appellants designate as items (4), (5) and (6).

As to the recitation of the "guide means," item (2), appellants do not deny that the inclined chutes of the reference satisfy the definition of those two words but they argue that the chutes "in no way support the wheels in an upright position in accordance with the limitation recited in claim 35." We cannot agree with that contention. The workpieces in Stolle are supported in upright position so as to roll about their axes as are appellants' wheels.

Appellants argue that the cylindrical workpieces of Stolle do not present the problem of supporting them in an upright position that arises with railroad car wheels. However, that argument ignores the broad scope of the claims on appeal. The claims are of such scope that they substantially encompass the disclosure of the references.

The claims define the objects to be worked on as simply "wheels." They make no allusion to railroad car wheels, which ordinarily have a projecting flange and a somewhat frustoconical tread that would cause special problems for maintenance in upright position. Neither do they recite any structural characteristics of the machine which are peculiar to the handling of that particular type of wheel. Stolle's workpieces are circular and roll

about their central axes and thus meet the essential requirements for wheels.[1]

Thus the issue narrows to item (3) of claim 35, defining the power actuated transfer means. The question is whether that recitation distinguishes patentably over the Stolle device where power means and gravity together provide the transfer energy. In other words, did the board err in holding it is an obvious modification of the inclined chute arrangement of the reference to use a horizontal surface and a pusher element so as to move the workpieces with a rolling motion along such surface to and away from the work station?

Appellants urge that the escapement members 110 and 112 of Stolle, while they are actuated by power, "bear no resemblance whatsoever to a transfer mechanism inasmuch as they merely serve as movable stops for stopping the rolling movement of the workpieces and to release the workpieces for continued rolling movement along the inclined surface." That argument overlooks two things. In the first place, the members 110 and 112 do cooperate with the chutes 106 and 108 to form a transfer mechanism which transfers workpieces through a machining station as does appellants' own transfer mechanism. Also overlooked is the fact that the rear teeth of those escapement members are specifically stated by Stolle to "act as pushers" upon the workpieces immediately ahead of them, the passage in the patent describing that feature reading as follows:

"* * * the blocks to be drilled are automatically supplied and dischar-

ged by the chutes 106 and 108 and the detents 110 and 112, * * *. *The rear teeth of the escapements act as pushers upon the blocks immediately ahead of them to aid in discharging such blocks when the front teeth are lifted.* This automatic feed permits more continous work and a higher speed with less supervision." [Emphasis supplied.]

Thus, Stolle may be said to utilize gravity augmented by power actuated starting means to automatically move the workpieces with a rolling motion to and from a machining station while the appealed claims require that the transfer means for moving the wheels through the same station be power actuated.

We find no error in the board's position. Certainly it would be obvious to one skilled in the art that he could obtain a construction with the convenience of the input and output stations at about the same level by substituting substantially horizontal chutes in place of the inclined chutes of Stolle and using power means for transferring the pieces in place of the gravity effect he would thereby lose. In fact, the only apparent reason for Stolle's use of inclined chutes is to obtain a gravity assist. Moreover, Stolle's utilization of a power assist through the rear fingers of the escapement members leads directly to the concept of using a power source alone for moving the pieces if one is willing to forego the assist from gravity.[2]

In arguing that the board erred, appellants cite several cases, principally in this court, in which it was held that modifications of the prior art were not

1. Appellants' application refers to the rails of their device as cooperating to support and guide "rollable workpieces, which in this particular instance are railroad car wheels."

Webster's New International Dictionary, Second Edition, sets out the following definitions of wheels:

"1. A disk, or a circular frame or body, * * *, capable of turning on a central axis; * * *.

"2. Anything resembling or likened to a wheel (sense 1); * * *."

2. It is noted that appellants were aware of the possibility of using either gravity or power to transfer workpieces. Thus they state in their application:

"* * * The finished workpieces in the receiving position will be removed from the machine, as by gravity or conveyor means, * * *"

They also state:

"As previously mentioned, the car wheels may be supplied to the loading station 52 of the machine tool as by gravity or by any other desired means."

obvious. We have considered those cases. However, the issue before us is whether *the particular modification involved in the present case* is obvious under 35 U.S.C. § 103 and other cases, involving different subject matter and based on different records, not only lack controlling significance but generally offer little help. In re Shaffer, 229 F.2d 476, 43 CCPA 758, which seems to us to be representative of the cited cases, is readily distinguished from the present situation. In that case, the court held it was not obvious to substitute an electronic amplifier including a reactive circuit for an electro-mechanical amplifier used in a prior art automatic titration system for the reason that the substituted elements provided the "new, unobvious and unexpected" result of minimizing the amplification of rapid fluctuations of the input to the amplifier circuit, which fluctuations were not representative of the true value of the condition intended to control the system. In contrast, the use of power actuation for the transfer means in the present case merely provides the obvious and expected result that the workpieces or wheels can be moved along the chutes or guide means without relying on any assist from gravity.

Although reference has been made primarily to claim 35 in our discussion of the rejection, it is apparent that our reasoning applies equally to the other appealed claims.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge, concurs in the result.